JAMES J. STANDING AND MARIE S. STANDING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57030. Filed June 28, 1957.

*Charles A. G. Dawe, Esq.,* and *Leroy T. Canoles, Jr., Esq.,* for the petitioners.

*James A. Scott, Esq.,* for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in the income tax of James J. Standing and Marie S. Standing for the taxable year 1951 in the amount of $23,542.96. Some of the adjustments made by respondent were not put in issue by petitioners and others have been conceded. The only issue presented here is whether petitioners were entitled to deduct as expenses in arriving at adjusted gross income (under sec. 22 (n (1), I. R. C. 1939) for the year 1951 the sum of $29,043.32 representing interest on income tax deficiencies and other expenses incurred in settling the deficiencies, which items were accrued by them in their Federal income tax return for 1951.

### FINDINGS OF FACT.

Some of the facts are stipulated and are found accordingly.

James J. Standing and Marie S. Standing are husband and wife, residing at Virginia Beach, Virginia, and their tax return for the year involved was filed with the then collector of internal revenue in Richmond, Virginia.

From 1944 until sometime during the year 1952, petitioner James J. Standing operated as sole proprietorships a retail lumber and building supply business and a business of building and selling houses. The individual income tax liabilities of petitioner James J. Standing, for the taxable years 1945, 1946, and 1947, and the joint individual income tax liabilities of both petitioners for the taxable years 1948

and 1949 were made the subject of investigation by respondent's agents. As a result of this investigation, the respondent, in July 1951, sent to petitioner James J. Standing proposed adjustments for the years 1944 to 1949, inclusive, showing total deficiencies and additions to the tax amounting to $160,566.46. The transmittal letter in the usual form stated if taxpayer did not agree with the adjustments he could file a protest and have opportunity for a hearing. There was attached to the transmittal letter the report of the revenue agent, which report worked up Standing's income on the specific item basis, and it stated: "The additional tax is due to increase in business income."

The agent's report shows that the items of asserted deficiencies consisted of finding various errors, including failure to report some rents, failure to use a proper basis in reporting a capital gain for sale of a parcel of realty, improperly reporting gains realized from sales of realty as capital gains and not ordinary income, improperly reporting Standing's withdrawals from the business as a salary deduction, inventory variances, improperly charging capital improvements to cost of sales or charging them off as repairs, and improperly reporting the business income on the cash basis when it should have been reported on the accrual basis.

On July 26, 1951, petitioners entered into a contingent fee contract with Charles A. G. Dawe, an attorney, and Leroy T. Canoles, Sr., a certified public accountant, whereby the attorney and accountant agreed to represent petitioners before the Bureau of Internal Revenue or other departments or courts in connection with the proposed deficiencies, and petitioners agreed to pay them one-fourth of any saving effected in the total proposed tax and penalty of $160,566.46 not to exceed the sum of $15,000. The contract also provided for the payment of $1,500 by petitioners to the attorney and accountant upon the execution of the contract, and this sum was paid on that date.

After their employment the attorney and accountant had various meetings with respondent's agents and it seems to have been agreed taxpayer's records failed properly to reflect his income.

In December 1951 the accountant and attorney and the revenue agents jointly worked up a net worth statement which eliminated the year 1944 but which showed a deficiency for the years 1945 through 1949 of $63,601.32, with additions for fraud (for the years 1945 to 1948) of $26,074.87, and an addition for negligence (for the year 1949) of $762.76, or a total of $90,438.95. This net worth statement was made the basis of settlement and respondent proceeded to determine the above total deficiencies and taxpayers executed Treasury Forms 870 for the pertinent years waiving the restrictions on, and agreeing to, the assessment and collection of the foregoing total deficiency in income tax, additions to the tax, and interest. These

Forms 870 were received at the Richmond office by the then internal revenue agent in charge on December 20, 1951. All of the foregoing assessments, plus interest, were paid during the calendar year 1952.

In their joint Federal income tax return for 1951, petitioners claimed a deduction for interest in the amount of $16,861.02, of which $14,676.16 pertained to the foregoing interest assessed with respect to the deficiencies for prior years. Petitioners accrued the unpaid interest under the heading of "General Expense" as a business deduction in arriving at their net profit from business operations, and, in turn, in arriving at their individual adjusted gross income.

Petitioners were billed under the contingent fee contract by the attorney and accountant for $13,591.53, the bill being received by the petitioner James J. Standing on or about December 21, 1951. In computing their net profit from business operations in 1951, and, in turn, in arriving at their individual adjusted gross income for 1951, petitioners deducted under the heading of "General Expense" legal fees in the amount of $14,367.16, only $1,500 of which was paid in 1951.

Petitioners elected to take the optional standard deduction of $1,000. Petitioners also took as a deduction a nonbusiness donation in the sum of $59.80 but they admit this was improper after electing to take the standard deduction.

In the statement attached to the notice of deficiency, the following explanations, insofar as material herein, were made:

(b) The business deductions claimed for accrued interest, donations and legal expenses in the respective amounts of $14,676.16, $59.80 and $14,367.16 have been disallowed for the reason that such expenses are held to be nonbusiness expenses.

\*        \*        \*        \*        \*        \*        \*

(d) The standard deduction claimed in the amount of $1,000.00 has been disallowed because itemized deductions have been allowed in lieu thereof.

\*        \*        \*        \*        \*        \*        \*

(f) and (g) Deductions have been allowed for the legal expenses and contributions paid in 1951 in the respective amounts of $1,500.00 and $59.80. Your contention that you are entitled to the use of the accrual basis of claiming nonbusiness expenses has been denied.

The records for the business operations of James J. Standing were substantially accrual in nature. Items such as accounts receivable, accounts payable, sales, and purchases were accrued. Inventories were used in computing profit and loss of the business. Some other items such as salaries were not accrued. Apparently no records, cash or accrual, were kept for nonbusiness income and expenses of petitioners. The income tax return of petitioners for 1951 reflected the accounting method or methods described above.

The expenses of interest on the deficiency for prior years, and the attorney's and accountant's fees incurred for settling said deficiency, were business expenses.

OPINION.

The basic question here is whether the interest on the deficiency and the attorney's and accountant's fees were deductible as business expenses. Petitioners took the deductions under section 22 (n) (1), Internal Revenue Code of 1939, in order to arrive at their adjusted gross income. The cited section allows deductions in arriving at adjusted gross income if they are "deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer * * *." And section 23 provides, in part:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

* * * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, * * *

The question comes down to whether or not the deductions are such as are allowed under section 23 which are attributable to Standing's business.

Respondent states the question in the case is: "Were the petitioners during the year 1951 on the cash basis for the purpose of claiming deductions for interest on federal income tax deficiencies and fees in connection with contesting asserted deficiencies in income taxes and fraud penalties for prior years, with the result that petitioners may not accrue those expenses which were not paid during the year 1951?" The single proposition argued in respondent's brief is that Standing was on the cash basis for the purpose of claiming the deductions. However, two arguments are advanced in support of this proposition: (1) That Standing was on the cash basis for reporting the business income, and (2) that the attorney's and accountant's fees and the interest indebtedness are in the nature of nontrade and nonbusiness expenses which constituted personal obligations of the taxpayers and can only be deducted when paid. Respondent does not argue the items were not properly accruable in 1951 in the sense that all events had not occurred in 1951 which fixed the liability. The taxpayers' liability for the items became fixed and the amount determined in 1951 so they were accruable items in that year.

The record amply shows Standing was on an accrual basis for reporting the business income. The record shows that at least since 1949 an accrual system of accounting was installed by Standing's

accountant and that system was in use thereafter and the income tax returns thereafter were filed on an accrual basis. Standing paid heavily for his failure to use the accrual method in earlier years. Respondent makes no real argument that Standing was not on an accrual basis for reporting business income—being content merely to call the method used "a hybrid method." We are satisfied that in 1951 Standing's method of accounting for his business income was substantially an accrual method.

Respondent's second argument is that the interest on the income tax deficiencies and the fees in connection with contesting the asserted deficiencies are items "having no connection with their businesses." The question is whether these items would be deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any [Standing's] trade or business" within the provisions of section 23 (a) (1) (A). We hold they were. In *Trust of Bingham* v. *Commissioner*, 325 U. S. 365, it was held expenses incurred in resisting a proposed additional assessment of Federal income taxes are deductible. There the deduction was allowed under section 23 (a) (2), for the taxpayer, a trust, was not engaged in business; but in the course of the opinion, the Supreme Court stated (p. 376):

What we have said applies with equal force to the expenses of contesting the tax deficiency. Section 23 (a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23 (a) (1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise—the management of property held for production of income. *Kornhauser* v. *United States, supra*, 152–153; *Commissioner* v. *Heininger, supra*, 470–471. The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we cannot say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income. Cf. *Commissioner* v *Heininger, supra*.

As stated, the *Bingham* case did not involve a taxpayer who was engaged in business but the above language and the presence of the citations to the *Kornhauser* and *Heininger* cases, where the taxpayers were in business, seems clear approval by the Court of the proposition that litigation expenses in income tax cases are deductible as business expenses if the taxpayer is in business and the litigation is proximately related to the business.

In *Kornhauser* v. *United States*, 276 U. S. 145, the expense item deducted was the attorney's fee paid by a taxpayer in defending himself against an accounting action brought by his former partner The question was whether this was an allowable deduction under section 214 (a) (1) of the Revenue Act of 1918 as "ordinary and necessary expenses paid or incurred during the taxable year in carry-

ing on any trade or business." The Supreme Court held it was, stating (p. 153):

In the application of the act we are unable to perceive any real distinction between an expenditure for attorney's fees made to secure payment of the earnings of the business and a like expenditure to retain such earnings after their receipt. One is as directly connected with the business as the other.

In *Commissioner* v. *Heininger*, 320 U. S. 467, the principal business activity of the taxpayer was a mail-order business and he took as a deduction under section 23 (a) of the Revenue Acts of 1936 and 1938, as ordinary and necessary expenses in carrying on his business, an item of attorney's fees, paid for defense of a "fraud order" issued by the Postmaster General. The Supreme Court, in holding the deduction proper, stated (at pages 470–471):

There can be no doubt that the legal expenses of respondent were directly connected with "carrying on" his business. * * *

It is plain that respondent's legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. * * *

In *Greene Motor Co.*, 5 T. C. 314, we held the taxpayer corporation could take as a deduction the fees paid an attorney and accountant to obtain settlement of asserted income tax deficiencies and penalties as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code of 1939.

In *W. D. Haden Co.* v. *Commissioner*, 165 F. 2d 588, reversing a Memorandum Opinion of this Court dated April 9, 1946, on another point, it was held the legal expense of a corporate taxpayer in resisting deficiency in income taxes and the interest on the deficiency were deductible.

The question of deductibility for tax litigation expense is no different than the question in other types of litigation. It is always a question of the connection of the litigation to the business. As stated by the Supreme Court in the *Kornhauser* case, 276 U. S., at 153:

where a suit or action against a taxpayer is directly connected with, or, as otherwise stated [citation] proximately resulted from, his business, the expense incurred is a business expense * * *

In *Louise C. Slack, et al., Executors*, 35 B. T. A. 271, the decedent derived substantially all of his income from real estate rentals and it was found that the income tax litigation expense for which deduction was sought involved issues as to the amount of profit realized from the sale of a parcel of real estate and the allocation of income between decedent and his wife. We held the deduction proper, saying (p. 281):

Under authority of the decision of the Supreme Court of the United States in *Kornhauser* v. *United States*, 276 U. S. 145, it is our opinion that the fee in question was an ordinary and necessary expense, incurred and paid by the decedent in carrying on a trade or business. * * *

In *Estate of Henry N. Brawner, Jr.*, 36 B. T. A. 884, 891, we held:

The attorney fees which are claimed as a deduction grew out of the litigation of decedent's tax liability in 1921, 1922, and 1923. During these years he was engaged in operating the milk and dairy business as a sole proprietorship. There can be no doubt that decedent was engaged in that business, and we are satisfied that the sum of $4,257.85 was paid out as attorney fees by decedent during the taxable year. In our opinion, this expenditure grew out of and proximately resulted from the milk and dairy business carried on by decedent and is deductible as an ordinary and necessary expense of that business. * * *

In *Caroline T. Kissel*, 15 B. T. A. 1270, the claimed deduction was for attorneys' fees and expenses for litigation of asserted additional assessments of income tax for prior years. We held the deduction proper, saying (p. 1275):

The record shows that petitioner is a woman of substantial means and that she invests rather heavily in stocks, bonds, and other securities, and in real estate, and that her son is employed regularly to manage her affairs and maintains an office and employs two assistants for that purpose. We are satisfied from the evidence, and the testimony of record, that substantially all of the alleged errors or inaccuracies, out of which the proposed additional assessment arose, which attorneys were employed to defend, were not mere isolated personal transactions, but were connected with the petitioner's trade or business within the meaning of section 214 (a) (1), *supra*, and we, therefore, hold that the fees paid, plus reimbursed expenses, are deductible.

Petitioners had a trivial amount of personal income not derived from the businesses but we have pointed out in our Findings of Fact that the asserted deficiency was based on adjustments of business income. Substantially all of the adjustments which gave rise to the deficiency grew out of and were proximately related to the business. Therefore, the legal and accounting expenses and the interest on the deficiency were properly deductible as business expenses. We hold the items of interest on income tax deficiencies and fees for contesting the deficiencies were properly deductible under the provisions of section 22 (n) (1) and section 23 (a) (1) (A) of the Internal Revenue Code of 1939 in arriving at taxpayers' adjusted gross income.

*Decision will be entered under Rule 50.*